```
O7V6SOWC                        Conference
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4              v.                              23 CR 593(VEC)
5  ADAMA SOW,
6              Defendant.
7  ------------------------------x
                                               New York, N.Y.
8                                              July 31, 2024
                                               2:45 p.m.
9  Before:
10
                     HON. VALERIE E. CAPRONI,
11
                                               District Judge
12
                              APPEARANCES
13
14 DAMIAN WILLIAMS
        United States Attorney for the
15      Southern District of New York
   HENRY ROSS
16      Assistant United States Attorney
17 JUSTINE HARRIS
        Incoming Attorney for Defendant
18
   DAVID PATTON
19 FEDERAL DEFENDERS OF NEW YORK
        Attorneys for Defendant
20 BY:  MARTIN SAMUEL COHEN

1          DEPUTY CLERK:  Counsel please state your appearances
2     for the record.
3          MR. ROSS:  Good afternoon, your Honor.  Henry Ross,
4     for the government.
5          THE COURT:  Good afternoon, Mr. Ross.
6          MR. MARTIN:  Good afternoon, your Honor.  Martin Cohen
7     for the Federal Defenders on behalf of Adama Sow.
8          THE COURT:  Good afternoon, Mr. Cohen, good afternoon,
9     Ms. Sow.
10          Please be seated, everyone.
11          All right, Mr. Cohen.  We're so close, all we have
12     left is sentence in this case.
13          MR. MARTIN:  Yes, your Honor.  And there were a couple
14     of significant things that I've done in this case, which I
15     think warrant new counsel to be appointed for Ms. Sow.
16          First of all, the issue, without getting into
17     attorney-client communications, have to do with the number of
18     items that should appropriately be ascribed to Ms. Sow from the
19     storage units.  When the government searched the units, they
20     recovered around 83,000 units that the government believes that
21     Ms. Sow is responsible for.  And there are contracts that were
22     produced in discovery with Ms. Sow's name that correspond to
23     these units.  We had reason to believe that not all of these
24     units should be ascribed to Ms. Sow.
25          THE COURT:  Right.

1           MR. MARTIN:  I should have asked the Court either get
2    my investigation done sooner or ask the Court to put off
3    sentencing well before the day of sentencing, which is what I
4    did when I --
5           THE COURT:  No harm no foul on that.
6           MR. MARTIN:  When I recognized this, but more
7    fundamentally to this application, your Honor, is that I made
8    representations in my sentencing submission without getting the
9    explicit consent or reviewing it properly with Ms. Sow in
10   connection with the -- you know, nothing whatsoever to do with
11   her acceptance of responsibility or our description of the
12   offense, but with the number of items --
13          THE COURT:  Hang on.  Let me just interrupt you for a
14   minute.  This is really for your client, but for you as well.
15          I understand that the amount of loss in this case is
16   disputed.  The government has their position; you had a
17   different position.  That's what a *Fatico* hearing is for.  We
18   can have further evidentiary hearings on what is the
19   appropriate amount of loss that, for guidelines purposes, I
20   should consider, Ms. Sow, when determining the guidelines that
21   apply to your sentence.
22          Mr. Cohen is as good as any other lawyer at arguing on
23   your behalf what amount that is.  The facts are what they are.
24   I am confident that any defense attorney will be able to
25   marshal the evidence that you think is important in persuading

1    me that the amount should not be 83,000 different items but
2    64,000 or some other number.  I don't have any view whatsoever
3    at the moment in terms of what the right amount is, but I
4    recognize that there's a dispute between the parties on that
5    amount.
6              Ms. Sow, I don't know if Mr. Cohen has told you this,
7    because maybe things have broken down to the point that you're
8    not listening to him, but that's not unusual.  It's not unusual
9    for there to be a dispute that's a factual dispute that doesn't
10   have anything to do with whether you admit that you're guilty
11   or not, that we then decide at the time of sentencing.  We can
12   have a hearing, if you want a hearing.  And in fact, that was
13   what I had asked your lawyer to tell me, is try to work it out
14   between you.  If you can't work it out, tell me you want a
15   hearing.  If you want a hearing, we'll have a hearing.
16             So, again, Mr. Cohen, I'm saying this as much for your
17   client as for you, is the only thing we have left to do in this
18   case is to proceed to sentence?  If Mr. Cohen doesn't represent
19   you and I relieve him because you say you just can't deal with
20   him anymore and you get another lawyer, there's going to be a
21   delay.  But nothing different is going to happen with the other
22   lawyer.  The same question is pending, which is, do you want a
23   hearing on the amount of loss -- I guess we're calling it an
24   amount of loss, but essentially the value of the goods that are
25   attributable to you.  And it's just going to be at a different

1     time.
2             I mean, a new lawyer is going to have to get up to
3     speed.  You're delaying the inevitable, but nothing is going to
4     change.  So I guess the question under these circumstances is,
5     why are we at the point where your client is looking for a
6     change of lawyers?
7             MR. MARTIN:  Your Honor, I mean, Ms. Sow can correct
8     me if I'm wrong, but I think Ms. Sow, her trust and faith in me
9     being able to effectively represent her in connection with a
10    *Fatico* hearing, if one is necessary, is not there, that we've
11    had a real breakdown in connection with that.  And under those
12    circumstances, because, you know, I recognize all of the
13    reasons that the Court would prefer not to change counsel, but
14    it is quite a discrete issue that's left.
15            THE COURT:  Right.
16            MR. MARTIN:  And I do want Ms. Sow to have faith that
17    the people who are representing her are doing so in a way that
18    she feels she can trust.
19            THE COURT:  Ms. Sow, do you want another lawyer?
20            THE DEFENDANT:  Yes.
21            THE COURT:  Is this part of a scheme or part of a plan
22    on your part to get a new lawyer and then seek to withdraw your
23    guilty plea?
24            THE DEFENDANT:  Can you say that again, please?
25            THE COURT:  Is this just the first step of what you

1   really want to do, which is make a request to withdraw your
2   guilty plea?
3              THE DEFENDANT:  Not necessarily.
4              THE COURT:  Not necessarily?
5              THE DEFENDANT:  Yeah.
6              THE COURT:  All right.  Mr. Cohen, I'm going to
7   relieve you with the thanks of the Court.
8              Ms. Sow, I'm going to appoint a new attorney.  Let me
9   be clear, you have the right to appointed counsel because you
10  cannot afford an attorney.  You do not have, under the
11  Constitution, a right to your pick of counsel.  As a matter of
12  course, when a client and a lawyer come to loggerheads and the
13  lawyer represents that the trust is broken, I will give the
14  client another attorney.  I will appoint a new attorney to
15  represent that client.  But I will only do this once.
16             You're mad at Mr. Cohen.  You don't think he's doing
17  what he should be doing.  I'm not going to inquire further on
18  that.  But when I appoint a new lawyer, and if you don't like
19  her, your choice at that point is going to be either stick with
20  her, hire your own attorney, or represent yourself.  Do you
21  understand that?
22             THE DEFENDANT:  Yes.
23             THE COURT:  Okay.  I'm not going to give you a third
24  appointed counsel.  Do you understand that?
25             THE DEFENDANT:  Yes, your Honor.

O7V6SOWC                         Conference

1           THE COURT:  All right.  To the extent this is step one
2    of what is sort of, in the back of your head, a multistep
3    process where you're going to ask to withdraw your guilty plea,
4    I make no representation about what will happen with that.  But
5    just because you get a new lawyer does not mean the Court is
6    going to allow you to withdraw your guilty plea.  Do you
7    understand that?
8           THE DEFENDANT:  Yes, your Honor.
9           THE COURT:  We went through an extensive allocution at
10   the time you pled guilty.  You told me you were pleading guilty
11   because you are guilty and not for any other reason; do you
12   understand?
13          THE DEFENDANT:  Yes.
14          THE COURT:  And you said you understood what you were
15   doing.  Do you remember that?
16          THE DEFENDANT:  Yes, your Honor.
17          THE COURT:  Okay.  Your new attorney has actually
18   managed to shake free of her other obligations, so she is here
19   and you can meet her today.  Her name is Justine Harris, and
20   she is sitting right behind you.
21          All right.  So here is what I am going to do.  Again,
22   with thanks of the Court, Mr. Cohen, you are relieved.
23          MR. MARTIN:  Thank you, your Honor.
24          THE COURT:  Ms. Harris, what do you think you're going
25   to need?  Do you know anything about this case?

1            MS. HARRIS:  I know a little bit.  I saw some of the
2    documents.  I do think, realistically, it sounds like 60 days
3    would be appropriate just to do the research and do whatever
4    corresponding investigation and discovery review is needed.
5            THE COURT:  Okay.
6            MS. HARRIS:  And perhaps, if for some reason before
7    the 60 days is up we think there's a reason for additional
8    time, if I write to the Court within sort of mid-September,
9    does that make sense?
10           THE COURT:  Sure.  Let me know.
11           Here is the thing.  I was ready for sentence except
12   for this sort of hanging issue about the amount of loss.  I'm
13   going to set a date, but I'll need you to let me know if the
14   defendant wants to withdraw her guilty plea.  I'm going to set
15   a date by which that decision needs to be made, a separate date
16   by which you need to tell me if that doesn't happen, whether
17   the defense wants a *Fatico* hearing or not.
18           Based on my review of the PSR and what I have done up
19   to now, it strikes me that the parties may be able in a
20   meet-and-confer -- again, without knowing what is going on in
21   Ms. Sow's head, there seems like there's a compromise that the
22   parties might well be able to agree to.  But, if not, I just
23   need to know whether you want a *Fatico* hearing or not.
24           So I'm going to direct that you inform me not later
25   than September 20th whether the defendant is seeking to

1  withdraw her guilty plea.
2           MS. HARRIS:  Okay.
3           THE COURT:  If she's not, I need you to let me know by
4  September 27, whether she wants a --
5           MS. HARRIS:  September 27?
6           THE COURT:  September 27.
7           MS. HARRIS:  And then assuming that we're proceeding
8  to sentence, can we get a sentencing date?
9           THE COURT:  How about the second week of October?
10          MS. HARRIS:  I'm sorry, Judge.  I ran up here without
11 my calendar, if I could step back to pull up my calendar?
12          THE COURT:  If these dates don't work, obviously let
13 me know.
14          MS. HARRIS:  So we're talking about the second week.
15 It's Rosh Hashanah and Yom Kippur the first two weeks.
16          THE COURT:  And Columbus Day.  So towards the end of
17 that.
18          So 17th for sentencing at 2:30.
19          MS. HARRIS:  That should be fine.
20          DEPUTY CLERK:  It has to be 3:30.
21          THE COURT:  Okay.  3:30.
22          MS. HARRIS:  Okay.  Anything further from the
23 government, Mr. Ross?
24          MR. ROSS:  No, your Honor.  I'll be on parental leave
25 by then, but I'll have a colleague.

O7V6SOWC                       Conference

1           THE COURT:  Are you almost at the end of your parental
2    leave or starting it?
3           MR. ROSS:  About to start.  Baby is arriving in a
4    couple weeks.
5           THE COURT:  Congratulations.
6           MR. ROSS:  Thank you.
7           THE COURT:  Is there anything further from the
8    defense?
9           MS. HARRIS:  Not at this time, Judge, but thank you.
10          THE COURT:  All right.  Thank you.  I'll see you all
11   in October.
12          (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25