UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------X
                                                   :
UNITED STATES OF AMERICA,                          :
                                                   :          23-CR-593 (VEC)
                      -against-                     :
                                                   :          OPINION & ORDER
ADAMA SOW,                                          :
                                    Defendant.      :
                                                   :
-----------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

In October 2023, law enforcement officers searched a Manhattan storage facility out of which several counterfeit goods traffickers operated. Law enforcement relied on Allegiance Protection Group ("APG"), a company that contracts with brands to provide intellectual property protection, to assist with authenticating and appraising items seized during the search. The investigation led to the arrest and indictment of Defendant Adama Sow, who pled guilty to trafficking in counterfeit goods in violation of 18 U.S.C. §§ 2320(a)(1)–(2). The Government moved the Court to enter an order providing, in relevant part, that Ms. Sow pay restitution to various luxury brands for expenses they incurred retaining APG over the course of the investigation and prosecution. *See* Mot. to Enter Forfeiture & Restitution (the "Motion" or "Mot."), Dkt. 72. The Motion is GRANTED.

## BACKGROUND

In early 2023, law enforcement began an investigation into suspected counterfeit goods trafficking at Gotham Mini-Storage ("Gotham") in midtown Manhattan. Final Pre-Sentence Report ("PSR"), Dkt. 22 ¶ 8. Over the course of its investigation, law enforcement learned that Defendant Adama Sow was the most prolific trafficker operating out of Gotham, having rented 21 different storage units at the facility. *Id.* In October 2023, after conducting controlled buys

from Ms. Sow of goods later determined to be counterfeit, law enforcement officers executed search warrants at Gotham, seizing over 80,000 counterfeit items in the units Ms. Sow rented. *Id.* ¶¶ 9–11.

Ms. Sow was indicted, *see* Indictment, Dkt. 1, and pled guilty to trafficking counterfeit goods in violation of 18 U.S.C. §§ 2320(a)(1)–(2), *see* Mar. 21, 2024, Order, Dkt. 18.  In its initial sentencing submission, the Defense argued that the Government had attributed more goods to Ms. Sow than the evidence supported, but that this discrepancy would not affect the Court's calculation of the sentencing guidelines.  *See* Jul. 3, 2024, Def. Sentencing Submission, Dkt. 26 at 5 n.6.  On the eve of sentencing, however, the Defense retracted that representation and argued that the dispute over the proper number of goods attributable to Ms. Sow, as well as the value of those goods, was material.  *See* Jul. 16, 2024, Letter, Dkt. 29.  Following a change of counsel, Ms. Sow requested a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), to address that issue.  *See* Sept. 27, 2024, Letter Mot., Dkt. 34 at 1.

The Court held the *Fatico* hearing in February 2025.  At the hearing, the Government called Michael Rieger as a witness.  Mr. Rieger is an employee of APG, which contracts with various companies, including sellers and manufacturers of luxury goods, to protect their intellectual property.[1]  Feb. 12, 2025, Tr. at 237:4–19.  The Government engaged APG to assist with authenticating and appraising the suspected counterfeit goods that law enforcement seized following its October 2023 search of Gotham.  *Id.* at 243:23–244:4.  Mr. Rieger, who conducted the authentication and appraisals, had previously worked with several of the luxury brands whose trademarks Ms. Sow infringed with her counterfeiting operation.  *See* Aug. 14, 2025, Gov. Letter ("Reply"), Dkt. 77, Ex. A at USAO_0000318–20 (affidavits from Mr. Rieger indicating that he

---

[1]     APG was acquired by another company, IP House, in May 2024.  Feb. 12, 2025, Tr. at 236:20–23.  For clarity, the Court will refer to the company in its pre- and post-acquisition form as "APG."

is associated with three of the victim brands, has been trained to recognize their marks, and believes that some of the seized goods are counterfeits of the brands' goods).  The victim brands, not the Government, paid APG for Mr. Rieger's work on the investigation and his participation in the prosecution of Ms. Sow.  *See id.* Ex. B at 2, 3.

Following the *Fatico* hearing, the Court sentenced Ms. Sow to two years' imprisonment, to be followed by a three-year period of supervised release.  *See* June 23, 2025, Tr. at 39:25– 40:2.  At sentencing, the Court concluded that Mr. Rieger had "the right background and expertise to value [Ms. Sow's] counterfeits."  *Id.* at 4:4–5.  The Court noted that Mr. Rieger "makes his living working for luxury brands and that his testimony did not take into account the fact that the market for these goods was Canal Street or similar venues, not stores or other venues where the prices might be a little higher."  *Id.* at 4:14–18.  The Court, therefore, reduced Mr. Rieger's estimate of the total value of the goods attributed to Ms. Sow — which had been approximately $7.5 million — to $6.6 million.  *Id.* at 4:19–21.

After sentencing, the Government moved to enter an order of forfeiture and (of relevance here) an order of restitution in the amount of $111,419.32 pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663, 3663A.  *See* Mot.  The proposed restitution is to be paid to the victim brands and was calculated using invoices sent to the brands by APG for work that Mr. Rieger performed authenticating and appraising goods seized in connection with law enforcement's October 2023 search of Gotham.  *See* Reply, Dkt. 77, Ex. D.  The amount also reflects expenses that the brands incurred in connection with Mr. Rieger's participation in

the *Fatico* hearing and other prosecution-related tasks. *Id.* The Government excluded unrelated costs, administrative time, and surveillance-related expenses from its restitution request.[2] *Id.*

The Defense opposes the Government's Motion to the extent it concerns restitution. *See* Aug. 5, 2025, Def. Letter ("Opp."), Dkt. 75.

## DISCUSSION

The MVRA requires courts to order restitution when (1) the defendant has been sentenced for an enumerated crime (including, as relevant here, the trafficking of counterfeit goods in violation of 18 U.S.C. § 2320), *see* 18 U.S.C. § 3663A(c)(1)(ii); *id.* § 2323(c), and (2) "an identifiable victim or victims has suffered a physical injury or pecuniary loss" as a result of that crime, *id.* § 3663A(c)(1)(B). "Victim" is defined as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* § 3663A(a)(2). "Read together, these statutory sections signal that the MVRA applies to a person who has suffered physical injury or pecuniary loss as a direct and proximate result of the commission of a specified crime." *United States v. Avenatti*, 81 F.4th 171, 208 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2598 (2024). Disputes arising under the MVRA must be "resolved by the court by the preponderance of the evidence." *United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013).

---

[2]    The Court had previously ruled that it would not order restitution for harm to the brands caused by the counterfeiting because quantifying the amount of harm was not reasonably possible. *See* June 23, 2025, Tr. at 47:23–48:9.

The Defense argues (1) that the victim brands are not entitled to restitution pursuant to the MVRA, and (2) that the Government failed timely to disclose aspects of Mr. Rieger's relationship with the Government and the victim brands.  Neither argument is persuasive.

## I.    Restitution is Warranted Pursuant to the MVRA

The Defense contends that the victim brands are not entitled to restitution pursuant to the MVRA for four reasons: (1) the victim brands did not incur any pecuniary loss other than APG's fees, which cannot, on their own, form the basis for restitution pursuant to the MVRA; (2) Ms. Sow was not the proximate cause of APG's investigation and resultant fees; (3) APG's fees are not recoverable because they were not specifically invited, requested, or otherwise induced by the Government; and (4) the Government has failed to show that APG's services were necessary to its investigation.  The Court will address each argument in turn.

### A.    The Victim Brands Suffered Pecuniary Loss Within the Meaning of the MVRA

First, the Defense argues that brands whose trademarks Ms. Sow infringed by selling counterfeits "did not incur any pecuniary loss as a result of the offense separate and apart from APG's fees," and hence do not qualify for restitution pursuant to the MVRA.  Opp. at 2; 18 U.S.C. § 3663A(c)(1)(B) (restitution is available only where "an identifiable victim or victims has suffered a physical injury or pecuniary loss").  Although the MVRA authorizes courts to award restitution to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense," *id*. § 3663A(b)(4), such "other expenses" must, according to the Defense, be distinct from the victim's "pecuniary loss."  Opp. at 2.  The Defense contends that because the brands seek reimbursement only for "other expenses" incurred in connection with

the investigation (specifically, the cost of retaining APG), rather than for some other underlying "pecuniary loss," they are not "victims" within the meaning of the MVRA.

The Defense is correct that the Second Circuit has not addressed whether a person or entity may seek restitution pursuant to the MVRA where their "*only* loss was 'other expenses incurred during participation in the investigation or prosecution of the offense.'" *Avenatti*, 81 F.4th at 210 (quoting 18 U.S.C. § 3663A(b)(4)). The Court does not, however, need to resolve that question because Ms. Sow's conduct did cause the victim brands to incur pecuniary loss. As the Court explained at sentencing, by making their trademarked products appear "ubiquitous," counterfeit goods trafficking "undermines the exclusive nature that the brand is going for" and makes consumers "associate shoddy products with the brand."[3] June 23, 2025, Tr. at 35:3–6. Such trademark damage is a classic type of pecuniary harm. *See United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007) ("It is well settled that trademarks are a form of property, and that intellectual or intangible property falls within the purview of criminal statutes designed to protect property." (citation omitted)); *see also* 18 U.S.C. § 2320(e)(2) (victims in counterfeiting cases may include, among others, (A) "producers and sellers of legitimate goods or services affected by conduct involved in the offense," and (B) "holders of intellectual property rights in such goods or services").

Accordingly, the brands suffered pecuniary loss and were "victims" within the meaning of the MVRA.

---

[3] The Government also argues that Ms. Sow's conduct caused pecuniary harm inasmuch as it diverted would-be buyers away from the brands' authentic goods and toward Ms. Sow's counterfeits. *See* Mot. at 5. At sentencing, the Court expressed skepticism that a substantial number of customers who purchased Ms. Sow's counterfeits, which the Defense and the Government agree were generally low-quality, otherwise would have purchased real items from luxury brands for hundreds or thousands of dollars more. *See* June 23, 2025, Tr. at 35:8–14. Although the Government may be correct that *some* such cases exist, they are speculative and, for purposes of this Motion, immaterial, given that the Government does not seek restitution for diverted sales and Ms. Sow's conduct caused pecuniary harm in other ways.

**B.    Ms. Sow Caused Harm to the Brands Within the Meaning of the MVRA**

Next, the Defense argues that the brands were not "victims" within the meaning of the MVRA because Ms. Sow's conduct was not the direct cause of their harm. Opp. at 3–4; 18 U.S.C. § 3663A(a)(2) (victim must be "directly and proximately harmed as the result of the commission" of the underlying offense to qualify for restitution). According to the Defense, because APG was called upon to investigate all of the goods seized from Gotham — a facility out of which multiple counterfeiters operated — the brands that hired APG would have incurred the same expenses "even if Ms. Sow had not been operating at Gotham." Opp. at 4.

This argument is unpersuasive for two reasons. First, the Court can easily find, by a preponderance of the evidence, that Ms. Sow was a "but for" cause of the victim brands' pecuniary harm, which is sufficient to satisfy the MVRA's causation requirement. *United States v. Marino*, 654 F.3d 310, 322 (2d Cir. 2011). As the Defense concedes, the search and seizure of goods at Gotham was prompted by law enforcement's determination that there was probable cause to believe counterfeiters were "operating out of Gotham." Opp. at 3. Ms. Sow, as the facility's most prolific counterfeiter, undoubtedly contributed to that determination. *See* Apr. 4, 2025, Gov. Sentencing Submission, Dkt. 56 at 10. In fact, the Government sent two confidential sources to Gotham mere days before the search, and both of them obtained counterfeit goods from Ms. Sow. PSR §§ 9–10. It strains credulity, therefore, to suggest that the Government's investigation of counterfeiting at Gotham would have proceeded in the manner it did were it not for Ms. Sow's conduct.

Second, even if the "but for" standard of causation were not satisfied, the link between Ms. Sow's conduct and law enforcement's search of Gotham would be sufficiently clear to satisfy the MVRA's causation requirement. The Second Circuit has warned against applying a "rigid 'direct' causation standard . . . that would foreclose restitution where even the slightest

intervening event severs factually or temporally the link between defendant's crime and victim's loss." *Marino*, 654 F.3d at 319. In particular, "courts have departed from the but-for standard where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome." *Paroline v. United States*, 572 U.S. 434, 451 (2014). Here, the combined conduct of multiple counterfeiters operating out of Gotham led to the widespread trafficking of counterfeit goods. By the Defense's reasoning, however, *none* of them could ever be ordered to pay restitution in connection with their crimes because the Government would not be able to prove that any single counterfeiter, viewed in isolation, incited the October 2023 search of Gotham. If courts were to adopt this argument, the most complex and widespread counterfeiting operations would evade the MVRA entirely, and victims would have a strong disincentive to cooperate with law enforcement on investigating such activities. That outcome would comport neither with the purpose of the MVRA nor with "the ordinary practice of requiring restitution for losses caused by an offense for which a defendant is convicted, where the loss is the product of the combined conduct of multiple offenders." *Paroline*, 572 U.S. at 477 (Sotomayor, J., dissenting). Instead, the Court adopts the commonsense proposition that counterfeit trafficking at Gotham, including by Ms. Sow, caused the Government's investigation and the Government's investigation, in turn, resulted in harm to the brands by way of fees it paid APG.

### C.    The Government Has Shown that APG Acted Pursuant to Its Request

Third, Ms. Sow argues that the Government's restitution request is inconsistent with the Supreme Court's decision in *Lagos v. United States*, which held, in relevant part, that the MVRA allows restitution only for expenses incurred in connection with "government investigations," not "private investigations." 584 U.S. 577, 581 (2018). Courts in this District have interpreted *Lagos* to "limit restitution to expenses incurred for investigatory activities that the government

expressly and specifically invited or requested." *United States v. Avenatti*, No. 19-CR-373 (PGG), 2022 WL 452385, at *5 (S.D.N.Y. Feb. 14, 2022), *aff'd*, 81 F.4th 171 (2d Cir. 2023) (cleaned up) (collecting cases). The Defense argues that APG's expenses are not recoverable as restitution because the Government has failed to show "that APG's close collaboration with law enforcement was conducted at the government's request, as opposed to as a service for the brands themselves (for whom APG works)." Opp. at 4.

The record belies the Defense's assertion. At the *Fatico* hearing, Mr. Rieger testified that he was "asked to assist" with law enforcement's investigation into Ms. Sow following the October 2023 search of Gotham by "tak[ing] a look at the [seized] items and evaluat[ing] the authenticity of the items." Feb. 12, 2025, Tr. at 243:23–244:4; *see also id.* at 270:14–25 (Mr. Rieger was "there with them" after law enforcement executed the search warrant of Gotham and conducted its investigation). The Defense's observation that APG also "assists . . . the brands involved in this case, with a broad range of intellectual property matters," Aug. 19, 2025, Def. Letter ("Sur-Reply"), Dkt. 78 at 1, is irrelevant because the Government does not seek restitution for non-case-related expenses. *See* Mot. at 1 (Government seeks restitution for the victim brands' "expenses incurred in connection with (i) authentications and appraisals of goods seized by law enforcement at the Storage Facility during the investigation of this case; and (ii) expert testimony offered at the February 2025 *Fatico* hearing"); Reply Ex. D (chart summarizing the invoices that form the basis for APG's restitution request, omitting "unrelated costs," "admin time," and "surveillance or associated expenses" and counting only "case-related costs for [law enforcement assistance] and *Fatico* testimony").

The Defense's attempt to compare this case to *United States v. Razzouk*, No. 11-CR-430 (ARR), 2021 WL 1422693 (E.D.N.Y. Apr. 15, 2021), falls short. In that case, the court declined

to award restitution for expenses related to an audit that a victim "commissioned . . . on its own," notwithstanding the fact that it occurred "during a time period in which the government had sought [the victim's] general assistance."  *Id.* at *5 (internal quotation marks omitted).  APG's work in this case goes beyond general assistance; the unrefuted testimony from the *Fatico* hearing reveals that the Government specifically asked APG to perform the authentication and appraisal tasks for which it now seeks restitution.

###### D.    The Government Has Shown that the Expenses for Which It Seeks Restitution Were Necessary

Finally, Ms. Sow argues that the Government has not provided evidence from which the Court can conclude that the expenses for which it now seeks restitution were "necessary" for its investigation.  Opp. at 4; *see Lagos*, 584 U.S. at 582–83 (opting against "[a] broad reading" of the word "necessary" as it is used in the MVRA).  The necessity of APG's services in this case is self-evident:  Ms. Sow requested a *Fatico* hearing about the number and value of counterfeit goods attributable to her because it was relevant to sentencing.  *See* Sept. 27, 2024, Letter Mot. at 1; *see also* Jul. 16, 2024, Letter at 1 (prior Defense counsel retracting earlier representation that disputes over the number and value of goods attributable to Ms. Sow were immaterial to sentencing).  The work for which the Government now seeks restitution relates exclusively to APG's expert analysis of that very issue and its participation in the *Fatico* hearing that Ms. Sow herself requested.  *See* Reply Ex. D.

## II.    The Government Met Its Disclosure Obligations

Finally, Ms. Sow argues that the Government did not comply with its disclosure obligations because it failed to explain the nature and extent of APG's coordination with law enforcement until the morning of Mr. Rieger's testimony at the *Fatico* hearing.  Specifically, Ms.

Sow argues that the Government failed to comply with the Rule 5(f) Order in this case, which provided:

> The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. This obligation applies regardless of whether the defendant requests this information or whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

Dkt. 7 at 2–3 (citations omitted).  According to Ms. Sow, the fact that Mr. Rieger worked at the Government's directive is both favorable to her and material to guilt or to punishment.

The Defense's argument fails as a matter of fact and law.  Factually, the evidence suggests that the Government provided the Defense with ample notice of Mr. Rieger's involvement with this case and his relationship with both the victim brands and the Government. Contrary to the Defense's claim that the Government "did not disclose APG's relationship to the brands when directly asked for the information by defense counsel," Opp. at 6, the Government provided affidavits to the Defense in December 2023 in which Mr. Rieger disclosed his affiliation with numerous victim brands and presented his analysis of the value of the goods seized from Gotham.  Reply Ex. A at USAO_0000318–20.  On February 3, 2025, the Government responded to the Defense's February 1, 2025, inquiries about Mr. Rieger's employment status and source of payment by explaining that he is a salaried employee at IP House (APG's parent company), which had, in turn, "been hired by certain of the victim brands." *Id.* Ex. B at 2–3.  Two days after that (and a week before the *Fatico* hearing), the Government produced to the Defense notes from a call between Mr. Rieger and the Government; during the call, Mr. Rieger explained that he "receives a salary from IP House, and IP [H]ouse bills the brands" for his services.  *Id.* Ex. C at 1.  In short, the Government appears to have been entirely

responsive to the Defense's inquiries about Mr. Rieger and APG, and disclosed his and his employer's financial relationship with the victim brands and the Government well in advance of the *Fatico* hearing.

Even if the Defense's argument were supported by the facts, the Defense has failed, as a matter of law, to show that Ms. Sow suffered any prejudice as a result of the Government's supposed failure, until immediately prior to the *Fatico* hearing, to clarify Mr. Rieger's relationship with the Government or the victim brands. The Defense's argument that the Government failed to disclose that APG's "'investigative' work included Mr. Rieger essentially being embedded with law enforcement for many months" is both factually dubious and legally irrelevant. Sur-Reply, Dkt. 78 at 2. However involved APG was with the Government's investigation prior to the Government's request that Mr. Rieger assist with examining the fruits of the October 2023 search of Gotham, the Government is only seeking restitution paid to APG after that point. Regardless, the Defense's submission provides no explanation whatsoever about what lines of impeachment or exculpation the Government's supposedly late or incomplete disclosures foreclosed.

Accordingly, the Court finds that the Government satisfied its disclosure obligations.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Enter Forfeiture and Restitution Orders is GRANTED. The Court will enter judgment consistent with this opinion. Ms. Sow is ordered to surrender to her designated institution not later than **noon, December 3, 2025.**

**SO ORDERED.**

Date:  October 2, 2025
       New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**