UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                           :

UNITED STATES OF AMERICA,          :

                          :        23-CR-593 (VEC)

             -against-         :

                          :        <u>MEMORANDUM</u>

ADAMA SOW,                 :        <u>OPINION & ORDER</u>

                    Defendant.      :

                          :

------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Defendant Adama Sow moves to continue bail pending appeal, pursuant to 18 U.S.C. § 3143(b), and to stay her restitution payments pending appeal, pursuant to Federal Rule of Criminal Procedure 38(e)(1). The Motion is DENIED.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of the case. Ms. Sow pled guilty to trafficking counterfeit goods in violation of 18 U.S.C. §§ 2320(a)(1)–(2). Following a *Fatico* hearing, the Court sentenced Ms. Sow to two years' imprisonment to be followed by a three-year term of supervised release. Judgment, Dkt. 80. Over the Defense's objections, the Court also ordered Ms. Sow to pay $111,419.32 in restitution and to forfeit her right, title, and interest in various pieces of property associated with her offense. Order of Restitution, Dkt. 82; Order of Forfeiture, Dkt. 81.

Ms. Sow appealed, and now moves to continue bail and to stay payment of restitution pending the outcome of her appeal. *See* Motion to Continue (the "Motion" or "Mot."), Dkt. 86. The Government opposes. *See* Opp. to Mot. to Continue, Dkt. 88.

## DISCUSSION

**I.      The Court Declines to Grant Bail Pending Appeal**

In general, a defendant who has been sentenced to a term of imprisonment must be

detained pending appeal, unless the Court finds "by clear and convincing evidence that the

person is not likely to flee or pose a danger to the safety of any other person or the community,"

18 U.S.C. § 3143(b)(1)(A), and "that the appeal is not for the purpose of delay and raises a

substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii)

a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of

imprisonment less than the total of the time already served plus the expected duration of the

appeal process," *id.* § 3143(b)(1)(B).  A "substantial question" is "a close question or one that

very well could be decided the other way" on appeal.  *United States v. Randell*, 761 F.2d 122,

125 (2d Cir. 1985) (internal quotation marks omitted).

The Court need not discuss whether Ms. Sow presents a risk of flight or danger to the

community because the questions Ms. Sow intends to raise on appeal concerning her sentence —

specifically, the factual findings relevant to her Sentencing Guidelines calculation and the

Court's failure to impose an allegedly statutorily-mandated noncustodial sentence — are not

substantial.

**A.      The Court's Factual Findings at Sentencing Are Unlikely to be Vacated on
        Appeal**

On appeal, Ms. Sow intends to challenge several of the factual findings that the Court

made when calculating the appropriate offense level pursuant to the Federal Sentencing

Guidelines.[1]  Mot. at 2–3.  The Court of Appeals "review[s] the District Court's factual findings

---

[1]      Although likely a moot point, the Court notes that, even if the Second Circuit were to adopt Ms. Sow's
proposed factual findings, it is not clear that that would result in a shorter sentence.  In her sentencing submission,
Ms. Sow argued that the appropriate offense level is 15, yielding a recommended range of 18 to 24 months'

relevant to a sentencing determination for clear error.  In order to vacate such findings, [the Court of Appeals] must view the evidence in the light most favorable to the government and nevertheless find to be impermissible the factual determinations based upon that favorably-viewed evidence." *United States v. Gasperini*, 894 F.3d 482, 485 (2d Cir. 2018) (citations and internal quotation marks omitted).  None of Ms. Sow's three challenges to the Court's factual findings is likely to satisfy that high standard.

*First*, Ms. Sow argues that the Court should not have applied a two-point aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(c) because the finding that Ms. Sow assumed a leadership role in a criminal operation "was based entirely on the incredible testimony—much of it hearsay—of Fernando Velazquez, the paid informant who initiated this investigation, and his younger brother Thomas Velazquez."  Mot. at 2.  The Court cannot discern a non-conclusory argument from this assertion.  As Ms. Sow correctly notes in her Motion, courts may consider hearsay testimony during sentencing proceedings so long as there is "some minimal indicia of reliability accompanying [the] hearsay statement."  *United States v. Martinez*, 413 F.3d 239, 244 (2d Cir. 2005).  Here, the fact that two separate witnesses — Fernando Velazquez and Thomas Velazquez — both identified the same individual as an employee of Ms. Sow's counterfeiting enterprise led the Court to find, by a preponderance of the evidence, that she had assumed a leadership role.  June 23, 2025, Tr. at 2:23–3:7.  Their corroboration of each other provides at least "some minimal indicia of reliability" and likely forecloses a finding of clear error.[2]

---

imprisonment pursuant to the Sentencing Guidelines.  Def. Sentencing Submission, Dkt. 57 at 40–41.  The 24-month sentence that the Court imposed, therefore, was within the Guidelines range that Ms. Sow argued was correct.

[2]    The Court also notes that the sheer scope of Ms. Sow's counterfeit operation strongly suggested that she was not a sole proprietor with no assistants.

*Second*, Ms. Sow argues that the Court erred in relying on the testimony of Michael Rieger to conclude that the value of the counterfeit goods seized exceeded $6.6 million.  Mot. at 3.  Again, Ms. Sow presents no meaningful argument on this point beyond asserting that the valuation adopted by the Court was "not reasonable" and that Mr. Rieger's credibility was tarnished because he was paid for his investigative work and collaborated with law enforcement. *Id.*  Conclusory, subjective statements do not constitute a persuasive argument that the Court committed clear error.  Ms. Sow's argument that Mr. Rieger's estimated valuation lacked a "concrete basis" is equally unpersuasive.  *Id.*  As the Court explained at sentencing, Mr. Rieger's estimates, like those of the Defense's expert, were based on his years of experience analyzing counterfeit goods; the Court gave Mr. Rieger's testimony greater weight than the Defense's expert because it found his experience more extensive and more relevant.[3]  June 23, 2025, Tr. at 4:4–12.  It is highly unlikely that the Court of Appeals, which must view all evidence in the light most favorable to the Government, will second-guess the Court's credibility determinations simply because Ms. Sow disagrees with them.

*Third*, Ms. Sow challenges the Court's conclusion that she was responsible for trafficking at least $3.1 million worth of counterfeit goods in addition to the $6.6 million worth of goods that were seized, claiming that this estimate "was based on speculation and wildly inconsistent testimony from the Velazquez brothers."  Mot. at 3.  This is simply false.  As explained at sentencing, the Court reached the estimate not on the basis of testimony but on the basis of Ms. Sow's bank records, which showed that "she had $3.1 million moving through her TD Bank

---

[3]    Notably, the Court did not accept Mr. Rieger's testimony uncritically.  As explained at sentencing, the Court credited Ms. Sow's argument that Mr. Rieger's valuations may have been inflated because he "makes his living working for luxury brands and . . . the market for [Ms. Sow's counterfeit] goods was Canal Street or similar venues, not stores or other venues where the price might be a little higher."  June 23, 2025, Tr. at 4:13–18.  Given those arguments, the Court reduced Mr. Rieger's estimate of the value of the goods Ms. Sow trafficked by ten percent.  *Id.* at 4:19–21.  Although Ms. Sow now challenges the Court's ten-percent discount as "unreasonable," Mot. at 3, she provides no explanation whatsoever for that characterization.

accounts during just eight months of 2021, when business in New York was just restarting after the pandemic." June 23, 2025, Tr. at 4:25–5:3. The Court's estimate did not take into account any counterfeiting activity in 2022 or 2023 because the Government presented no bank records from those years, even though the Velazquez brothers offered "credible" testimony that Ms. Sow received many shipments each week during that time. *Id.* at 5:8–14. Simply put, the $3.1 million figure was an extremely conservative estimate supported by concrete evidence. It is, therefore, highly unlikely that the Court of Appeals, viewing the evidence in the light most favorable to the Government, will find that the Court committed clear error in concluding that Ms. Sow trafficked at least $3.1 million in counterfeit goods in addition to the approximately $6.6 million in counterfeit goods that were seized.

### B.    The Court Was Not Required to Impose a Noncustodial Sentence

Next, Ms. Sow argues that the Court erred by sentencing her to a term of imprisonment. She claims that a noncustodial sentence is required by 28 U.S.C. § 994(j), which directs the Sentencing Commission to create guidelines that reflect "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." That general rule is not applicable here, however, because Ms. Sow received a leadership enhancement pursuant to U.S.S.G. § 3B1.1(c); accordingly, she is not a typical first-time offender. Indeed, U.S.S.G. § 4C1.1, which the Sentencing Committee adopted in response to 28 U.S.C. § 994(j), specifically bars individuals who receive § 3B1.1 aggravating role enhancements from receiving Guidelines reductions that would otherwise be available to them as first-time offenders. U.S.S.G. § 4C1.1(10); *cf. United States v. Paredes*, No. 15-CR-582 (WFK), 2023 WL 8096922, at *6 (E.D.N.Y. Nov. 21, 2023) (discussing the history of § 4C1.1). For the

reasons already discussed, the Court finds it unlikely that the Court of Appeals will reverse the Court's factual finding that Ms. Sow exercised a leadership role; hence, her argument that she should have received a noncustodial sentence pursuant to 28 U.S.C. § 994(j) is unlikely to succeed.

## II.     The Court Declines to Stay Ms. Sow's Restitution Obligations

Ms. Sow argues, pursuant to Federal Rule of Criminal Procedure 38(e)(1), that the Court should stay her restitution obligations pending appeal.  In considering whether to grant such a request, courts consider "(1) whether the defendant has made a strong showing that [she] is likely to succeed on the merits of [her] appeal; (2) whether the defendant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  The first two factors are generally the most important."  *United States v. Rahmankulov*, No. 20-CR-653 (RA), 2025 WL 326495, at *5 (S.D.N.Y. Jan. 28, 2025) (cleaned up).

As to the first factor, Ms. Sow has not made a strong showing that she is likely to succeed on appeal.  The crux of her argument is that the Court erred in awarding restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663, 3663A, because there was "no specific proof" that the victim brands experienced losses of sales or any other pecuniary loss as a result of Ms. Sow's conduct.  Mot. at 4.  The Court discussed this argument at length in its previous Opinion overruling Ms. Sow's objections to the Government's proposed restitution order.  *See* Oct. 2, 2025, Opinion & Order, Dkt. 79 at 5–8.  As the Court explained in that Opinion and at sentencing, Ms. Sow's conduct caused the victim brands to experience trademark damage because, by making their trademarked products appear "ubiquitous," counterfeit goods trafficking undermines the "exclusive nature that the brand is going for" and makes consumers

"associate shoddy products with the brand." *Id.* at 6.  The Second Circuit has recognized trademark damage as a form of pecuniary harm when interpreting other statutes that provide for restitution.  *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007).  Ms. Sow has presented no reason to believe that it will interpret the MVRA any differently.

As to the second factor, the Court finds that the risk of irreparable injury is low.  "As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).  The Defense's observation that Ms. Sow has "limited resources" and is the primary caretaker for her niece does not render the injury of having to pay restitution irreparable.  Mot. at 4.  At this time, the Court has ordered Ms. Sow to pay ten percent of her gross income toward her restitution each month.  Order of Restitution at 2.  If her financial circumstances change, such that she is unable to pay that amount, she can move for an adjustment.  *See* 18 U.S.C. § 3664(k).  The mere fact that Ms. Sow has other financial obligations, however, does not make the payment schedule irreparably injurious.

The remaining two factors — injury to the other parties and the public interest — tilt in favor of requiring Ms. Sow to pay restitution, inasmuch as the victim brands are owed money from Ms. Sow and the public has an interest in seeing that crime victims are fairly compensated.

Accordingly, the Court declines to stay Ms. Sow's obligation to pay restitution.

## CONCLUSION

For the foregoing reasons, Ms. Sow's Motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the open motion at Dkt. 86.


**SO ORDERED.**

**Date:  November 18, 2025**
      **New York, NY**
                                            **VALERIE CAPRONI**
                                   **United States District Judge**